## UNITED STATES LABOR PARTY et al., Plaintiffs-Appellants,

v.

## John J. OREMUS, Individually and in his capacity as President of the Village of Bridgeview et al., Defendants-Appellees.

### No. 79–2151.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1980.

Decided April 24, 1980.

Rehearing Denied June 18, 1980.

---

Cynthia Gray (Law Student), Northwestern University Legal Clinic, Chicago, Ill., for plaintiffs-appellants.

John B. Murphey, Chicago, Ill., for defendants-appellees.

Before SPRECHER, TONE and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiffs-appellants, the United States Labor Party (USLP), and its members,[1] appeal the dismissal of their first amended complaint for failure to state a claim for which relief could be granted. They also claim on appeal that the district court abused its discretion when it denied their motion to alter, amend or vacate the judgment and to grant leave to amend the complaint without prejudice to the filing of a new suit. We affirm.

### The Facts

The events which are the subject of the complaint involve plaintiffs' attempts to sell the USLP newspaper, *New Solidarity*, and otherwise advocate their views while standing in the intersection of 79th Street and Harlem Avenue in the Village of Bridgeview.[2] Throughout the time period involved in the complaint, however, an Illinois state statute unqualifiedly and unambiguously prohibited intersection solicitation on the highways of the State of Illinois. The statute, Illinois Revised Statute, Chapter 95½, § 11–1006(b) (1976), as amended effective January 1, 1976, provided that

> No person shall stand on a highway for the purpose of soliciting employment, business or contributions from the occupant of any vehicle.

Plaintiffs do not contest the constitutionality of Section 11–1006(b). They argue, however, that actions taken by defendants, the Village of Bridgeview and several of its officers in their individual and official capacities, between June and November 1977

in preventing the USLP from soliciting in intersections deprived them of their rights protected by the First Amendment made applicable to the states by the Fourteenth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. They seek declaratory and injunctive relief as well as damages.[3]

Plaintiffs in May 1977 were soliciting their newspaper and advocating their views to persons in vehicles stopped momentarily at the intersection of 79th and Harlem. Village police interceded and informed plaintiffs that such solicitation could not be performed without a Village permit. A week or two later Richard Leebove, the legal director of the USLP telephoned Don Billig, the Clerk of the Village of Bridgeview. Billig informed Leebove that the Village required a permit for such solicitation. Thereafter, Leebove submitted applications for permits and on July 28, 1977, the USLP received the permits.

Beginning on July 29, members of USLP, armed with the proper permits, returned to the intersection of 79th and Harlem and again solicited occupants of vehicles. The solicitation continued until August 19, 1977 when the USLP was informed that their permits were revoked because of various complaints citizens of the Village had filed with the Village concerning the USLP members' activity in the intersection.

On September 1, 1977, a representative of USLP attended a Village council meeting to protest the Village's decision to prohibit USLP intersection solicitation. The USLP made their constitutional objections known

---

1. The United States Labor Party is a political group which sponsors candidates in national, state, and local elections.

2. This case has been before this court on one previous occasion. The plaintiffs first sought a preliminary injunction to enjoin defendants' prohibition on intersection solicitation. The district court denied the injunction and we affirmed in an unpublished order. *United States Labor Party v. Oremus*, No. 78–2293 (7th Cir. March 6, 1979). In affirming we said that the defendants' application and enforcement of Illinois Revised Statute, Chapter 95½, § 11–1006(b), which unqualifiedly prohibits any so-

licitation in intersections in Illinois, was "a reasonable restriction as to the place and manner of the exercise of the rights entwined in plaintiffs' political solicitation." We further said that our decision was not intended to express any view as to the merits of plaintiffs' other claims.

3. There are no allegations in the complaint that after November 1977 the Village has done anything but uniformly enforce Section 11–1006(b), as they are required to do. The only events involved in this case occurred between June and November 1977.

at this meeting but the Village council indicated that the decision would not be changed. On September 23, the Village received a letter from the USLP requesting information regarding the revocation of the permits. Clerk Billig referred the plaintiffs to the Village's attorney, Marvin Glink. Pursuant to the plaintiffs' request for information a meeting was held on October 24. At that meeting the Village and the USLP reached an agreement concerning conditions under which the USLP would be permitted to resume their solicitation and advocacy activities in the intersection. Pursuant to this agreement, USLP members were to receive instructions on safe methods of intersection solicitation from Village police. In early November, the chief of the Village police, upon learning of the agreement, informed the Village council of the existence of the Illinois statutory prohibition. The Village, from that point on, enforced the ban on intersection solicitation within the Village.

Plaintiffs contest the Village officials' actions in first permitting and then prohibiting them from engaging in intersection solicitation. There appear to be two possible explanations for the Village officials' activities involving intersection solicitation prior to November 1977. First, the Village officials may have been unaware of the existence of the relatively new Section 11–1006(b). Alternatively, although it does not appear to be the case, they may have been aware of the statutory provision, but decided not to enforce it until November, 1977. We find, regardless of which of these two explanations is true, plaintiffs' complaint does not state any claim entitling them to relief.

### Appellate Jurisdiction

As an initial matter defendants assert that this court is without jurisdiction to entertain the appeal. The defendants claim that plaintiffs' motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure requesting, in essence, the district court to reconsider its judgment dismissing the complaint, was not a proper motion and it did not toll the time for filing a notice of appeal. Thus, defendants argue that since the notice of appeal was filed more than thirty days after the entry of the district court's judgment dismissing the complaint, the appeal was untimely and this court lacks jurisdiction over the appeal.

█ A Rule 59(e) motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law. *Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir. 1978); *Hahn v. Becker*, 551 F.2d 741, 745 (7th Cir. 1977). Further, a timely Rule 59(e) motion tolls the running of the time for filing a notice of appeal. *Motteler v. J. A. Jones Construction Co.*, 447 F.2d 954 (7th Cir. 1971); Fed.R.App.P. 4(a). Since plaintiffs filed a proper Rule 59(e) motion within ten days of the entry of the district court's judgment and they filed their notice of appeal within thirty days of the denial of the Rule 59(e) motion, plaintiffs' motion was timely and proper and we have jurisdiction over the appeal.

### First Amendment Claim

Plaintiffs contend that defendants, by depriving them of soliciting in the intersection, violated the First Amendment, as applied to the states through the Fourteenth Amendment.

█ First Amendment rights are not absolute. Reasonable time, place, and manner restrictions on the exercise of First Amendment rights have long been recognized. The Supreme Court has stated:

Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the

most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions. . . .

*Cox v. New Hampshire*, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941). Narrow and reasonable regulation of the exercise of rights designed to keep the streets open and safe for travel is not prohibited by the First Amendment. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 154–55, 89 S.Ct. 935, 940–41, 22 L.Ed.2d 162 (1969); *Adderley v. Florida*, 385 U.S. 39, 41–43, 87 S.Ct. 242, 244–45, 17 L.Ed.2d 149 (1966); *Cox v. Louisiana*, 379 U.S. 536, 554–55, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965).

▮ Illinois Revised Statute, Chapter 95½, § 11–1006(b), is a narrow and reasonable limitation on solicitation in intersections which local villages are required to enforce. It is precisely drawn. It only modestly restricts solicitation by prohibiting it only on highways. As we said in our earlier unpublished order in this case: "The obvious concern of the State is the evident dangers of physical injury and traffic disruption that are present when individuals stand in the center of busy streets trying to engage drivers and solicit contributions from them." This legislatively expressed concern outweighs plaintiffs' interest in soliciting in traffic and is thus, a permissible regulation.[4] The Village had no discretion one way or the other. Neither plaintiffs nor anybody else had the right to violate

the statute. The fact that the Village, in violation of the state statute permitted plaintiffs to solicit in the intersection for a short time and then recalled that permission in accordance with the statute does not by itself create in plaintiffs a First and Fourteenth Amendment right of intersection solicitation.

### Prior Restraint

Plaintiffs secondly contend that the Village's requirement for solicitation permits was an unconstitutional prior restraint upon the exercise of their rights protected by the First Amendment.

The relevant factual allegations of plaintiffs' complaint, which we take as true, indicate that Village police officers told USLP members that they needed a permit to solicit in the Village's intersections. The plaintiffs then applied for and received permits. Plaintiffs have not included the permit applications in the complaint nor have they alleged any exercise of Village discretion in the issuance of the permits.

▮ As we have noted, the State made intersection solicitation in Illinois unlawful. The requirement that a permit must be obtained before engaging in an activity in which plaintiffs had no right to engage and which the Village had no right to license does not state a claim of an unconstitutional prior restraint.

The Supreme Court has noted that municipal permit requirements impinging First Amendment rights are not *per se* unconstitutional. *See Hynes v. Mayor of Oradell*, 425 U.S. 610, 617, 96 S.Ct. 1755, 1759, 48 L.Ed.2d 243 (1976); *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). The Supreme Court has indicated that it is the unguided discretion of those issuing permits which renders the requirement unconstitutional. *See, e. g., Shuttles-*

---

**4.** Plaintiffs argue that they have peacefully and safely solicited in traffic and that intersection solicitation is the only effective means they have of soliciting. For both reasons, they claim, the Village cannot prohibit their intersection solicitation. Section 11–1006(b), however, has no qualifications. It prohibits all in-

tersection solicitation. Plaintiffs also argue that the defendants could serve their interest through a less restrictive means by punishing only those who actually disrupt traffic or engage in unsafe behavior. The State need not wait for personal injuries.

worth v. City of Birmingham, 394 U.S. at 151, 89 S.Ct. at 939; Staub v. Baxley, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958) (and cases cited therein at pages 322–24, 78 S.Ct. at pages 282–83). In this case plaintiffs' complaint does not include any allegations concerning the discretion of local officials in the grant of the permits. Local officials had no discretion.

### Procedural Due Process

Plaintiffs next claim that the Village's revocation of their solicitation permits without notice or an opportunity to contest the revocations prior to the revocations deprived them of due process. They assert the permits represented a liberty or property interest which the Village could only revoke after sufficient process was provided.

The Supreme Court, since its 1972 decision in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), has continually held that an individual deprived by state action of a liberty or property interest is entitled to some procedure to determine if the individual has been treated fairly. As a threshold, however, state action must impinge a liberty or property interest of an individual. See J. Nowak, R. Rotunda, & N. Young, Constitutional Law (West 1977) at 478. After the deprivation of an individual's liberty or property interest is established the application of the Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), balancing analysis determines the process to which the Constitution entitles the individuals.

The complaint alleges that the revocation of plaintiffs' solicitation permits prevented plaintiffs from soliciting and advocating its views in the intersections of the Village of Bridgeview.[5] These revocations, however, did not deprive plaintiffs of any liberty interest. The Village's initial issuance of the solicitation permits does not override the clear legislative mandate prohibiting intersection solicitation. The original permits at most extended a right to solicit unlawfully in the intersection. That is not a liberty protected by the Due Process Clause.

International Society of Krishna Consciousness, Inc. v. Rochford, 585 F.2d 263 (7th Cir. 1978), is inapplicable. In that case we said that a licensing arrangement which impinged First Amendment rights demands strict procedural safeguards. Id. at 271. Here, however, the permit requirement did not impinge any protected rights. Thus, any suggestions in International Society of Krishna Consciousness, Inc. v. Rochford, or in other cases which plaintiffs cite (e. g., Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Slate v. McFetridge, 484 F.2d 1169 (7th Cir. 1973)), that notice and a hearing prior to revocation is constitutionally required are inapplicable.

To the extent that the permits may have represented some property interest because they allowed plaintiffs to exercise a privilege which defendants led them to believe was available (Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959)), we find that the Village provided sufficient process. In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court delineated a framework for analyzing the adequacy of the procedures accompanying the deprivation of a property interest. The Court stated that identification of the requirements of due process depends upon consideration of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

---

**5.** The complaint reveals that plaintiffs were only interested in intersection solicitation. They asserted that intersection solicitation was the only effective method of solicitation available to them. Nor are there any factual allegations concerning their attempt to solicit any place but in the intersections of the Village. There are no allegations in the complaint that the Village ever prevented or would prevent them from soliciting elsewhere in the Village. Therefore, the revocation of the permits only prevented them from soliciting in intersections.

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

■ In this case the revocation of the permits merely prevented plaintiffs from engaging in an activity which had legislatively been made unlawful. The Village officials' interest in ensuring an orderly flow of traffic and preventing traffic injuries, as embodied in the state statute, is substantial. The process the plaintiffs did receive, an opportunity to negotiate with Village officials after the revocation which resulted in an agreement under which the Village conditionally reissued the permits, was sufficient.

■ The Village's prohibition on intersection solicitation in November 1977 was undeniably based on enforcement of Section 11–1006(b). No process is required where, as here, a legislative enactment is used to affect the property of an individual. *Bi-Metallic Investment Co. v. State Board of Equalization of Colorado,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). Hence, the absence of a hearing prior to the revocation of the reissued permits did not state a due process claim. *E & E Hauling, Inc. v. Forest Preserve District of Du Page County,* 613 F.2d 675, 682 (7th Cir. 1980).

### Equal Protection Claim

Plaintiffs next assert that they have alleged sufficient facts to state a claim under the Equal Protection Clause. They argue that defendants' activities in preventing them from engaging in intersection solicitation between August and November 1977 involved selective enforcement of the state statute entitling them to relief under *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973) (in banc).

Initially we note that plaintiffs' complaint does not contain any selective enforcement allegations. There is no indication in the complaint that any other group or individual was even interested in solicit-

ing in intersections in the Village. However, in affidavits attached to plaintiffs' motion for a preliminary injunction, an affiant asserted that on October 14, 1977 he observed, for a half hour period, members of the Lions Club soliciting in the intersection of 79th and Harlem in Bridgeview. Another affidavit contained assertions that prior to November 1977 the affiant observed individuals soliciting in the intersection of 79th and Harlem.

■ We are not sure to what extent Judge Leighton may have considered those affidavits in dismissing plaintiffs' equal protection argument. While there is some authority for the proposition that the district court, in ruling on a motion to dismiss, may consider nothing but the allegations of the complaint (2A *Moore's Federal Practice* ¶ 12.09 at 2301 n.23), we feel that in the circumstances of this case it is preferable that the affidavits be considered and the motion to dismiss be treated as a motion for summary judgment. *See Thompson v. New York Central Railroad Co.,* 361 F.2d 137, 143–44 (2d Cir. 1966); 2A *Moore's Federal Practice* ¶ 12.09 at 2300–01.

Looking at the factual allegations contained in the affidavits we find plaintiffs have not stated a claim of selective enforcement. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 is the leading Supreme Court case for the proposition that selective enforcement of a statute may violate equal protection. In *Yick Wo* a municipal ordinance prohibited the construction or operation of a laundry in a wooden building without a municipal license. The municipality had issued licenses to all but one of the eighty non-Chinese applicants while it denied licenses to 200 other applicants, all of whom were Chinese. The Court found this discrimination violative of the Equal Protection Clause and ordered the discharge from prison of the petitioner who had been arrested for operating a wooden laundry without a license.

In *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 446 (1962), the Court defined the scope of unconstitutional selective en-

forcement. Oyler petitioned for a writ of habeas corpus claiming that of six men subject to sentencing as habitual criminals (three-time offenders) in Taylor County Court, he was the only individual so sentenced. He also recited statistics that 904 known offenders throughout West Virginia subject to habitual offender sentencing were not so sentenced. Oyler claimed the prosecutors discriminated against him by seeking the more severe penalty as to him but not for the several other three-time offenders. The Supreme Court rejected this claim, stating:

> We note that it is not stated whether the failure to proceed against other three-time offenders was due to lack of knowledge of the prior offenses on the part of the prosecutors or was the result of a deliberate policy of proceeding only in a certain class of cases or against specific persons. The statistics merely show that according to penitentiary records a high percentage of those subject to the law have not been proceeded against. There is no indication that these records of previous convictions, which may not have been compiled until after the three-time offenders had reached the penitentiary, were available to the prosecutors. Hence the allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses. This does not deny equal protection due petitioners under the Fourteenth Amendment.

*Id.* at 456, 82 S.Ct. at 506 (footnote deleted).

An individual must allege facts to show that while others similarly situated have generally not been prosecuted, he has been singled out for prosecution, and that the discriminatory selection of him was based upon an impermissible consideration such as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974); *United States v. Falk,* 479 F.2d 616, 619–20; Comment, *The Right of Nondiscriminatory Enforcement of State Penal Laws,* 61 Colum.L.Rev. 1103 (1961).

The only mention concerning other than USLP intersection solicitation concerned a single half hour period on October 14 when the affiant observed Lions Club members soliciting.[6] There is no allegation that the Village knew of the Lions' intersection solicitation, or deliberately permitted it to occur. There is no allegation that the Lions sought or obtained permits. Plaintiffs' complaint and affidavits fail to allege that others similarly situated have generally been free from prosecution while plaintiffs have knowingly been singled out for disparate treatment. *See United States v. Berrios,* 501 F.2d at 1211. Plaintiffs' conclusory affidavits are simply insufficient to raise a claim entitling them to relief. *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 662–63 (7th Cir. 1978), *cert. denied,* 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). This appears to be a situation where plaintiffs were permitted for a time to solicit in the intersection but should not have been. The isolated incident of another group briefly soliciting in the intersection is too insignificant and isolated to raise an equal protection claim. The plaintiffs at least had the advantage of intersection solicitation, although illegal, for several weeks whereas the Lions Club group was observed in the intersection only for a single half hour period. Perhaps, if anyone might have cause to complain in those circumstances it would be the Lions Club, not the plaintiffs. However, there is no basis for complaint by anyone. The district court properly dismissed the equal protection claim.

---

**6.** Another affidavit contained allegations that the affiant, prior to November 1977 observed people soliciting in the intersection of 79th and Harlem. The affidavit fails to specify if these people were the same Lions Club group observed on October 14, if they were other than USLP members, if these people were soliciting during a period of time when the USLP was prevented from soliciting, if these people had valid Village permits, or if the Village officials were aware and permitted this solicitation activity. Absent more specific allegations this affidavit adds nothing to plaintiffs' substantive claims.

*Rule 59(e) Motion*

Plaintiffs finally argue that the district court erred in dismissing its Rule 59(e) motion made after the district court dismissed the case. Plaintiffs asked the district court to reconsider its decision and to permit plaintiffs to file a second amended complaint adding additional factual allegations. The district court denied the motion stating that the denial was "without prejudice to plaintiffs filing a suit alleging matters not disposed of in this case."

Rule 15(a) of the Federal Rules of Civil Procedure provides that post-judgment amendments require leave of court. *See* Fed.R.Civ.P. 15(a); Wright & Miller, *Federal Practice and Procedure* § 1489 at 446. The district court's decision not to permit an amendment after judgment is entered is reviewable only for an abuse of discretion. *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir. 1979) (per curiam). Delay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment. *Landon v. Northern Natural Gas Co.,* 338 F.2d 17 (10th Cir. 1964), *cert. denied,* 381 U.S. 914, 85 S.Ct. 1529, 14 L.Ed.2d 435 (1965).

Plaintiffs argue they should have been able to add factual allegations to their complaint concerning the brief solicitation by members of the Lions Club on October 14, 1977. Since such an amendment would not affect the outcome of the case there is no abuse of discretion.

Plaintiffs also sought to add an allegation that in January 1979 party members were refused permission to solicit door-to-door in the Village. That was the first allegation involving anything but intersection solicitation. Prior to that moment plaintiffs were claiming that intersection solicitation was their only effective means of solicitation. There is no explanation for the delay in not raising the new issue prior to the entry of judgment. We find no abuse of discretion in denying the motion without prejudice to commencing a new suit for matters not dealt with in this case.

Accordingly, the district court's judgment is affirmed.

AFFIRMED.