**ACORN and Liz Wolff, Plaintiffs,**

v.

**CITY OF PHOENIX and the Chief of Police of the City of Phoenix, Defendants.**

**No. CIV 83–870 PHX EHC.**

United States District Court, D. Arizona.

Feb. 15, 1985.

Stephen R. Bachmann, Bachmann & Weltchek, New Orleans, La., for plaintiffs.

Richard J. Graci, City of Phoenix, Asst. City Atty., Phoenix, Ariz., for defendants.

## ORDER

CARROLL, District Judge.

The Court held a one-day trial in the above-captioned matter on February 5, 1985. After consideration of the testimony, exhibits and all memoranda submitted by the parties, the Court finds in favor of the Defendants for the reasons more fully discussed below.

Members of the non-profit association, ACORN, engage in a fund raising activity known as "tagging". This entails members approaching cars stopped at traffic lights in intersections to solicit donations and to provide information in the form of a leaflet. The City of Phoenix has prohibited ACORN members from engaging in tagging activity.

\* The ordinance at issue here was seemingly modeled after the one at issue in *United States Labor*

At the time the Court denied cross Motions for Summary Judgment on March 12, 1984, there was no specific ordinance dealing with the tagging activity. Prior to trial, on May 9, 1984, the City of Phoenix adopted an ordinance (P.C.C. § 36–101.01) which states: \*

> No person shall stand on a street or highway and solicit, or attempt to solicit, employment, business or contributions from the occupant of any vehicle.

At issue is whether this ordinance meets constitutional standards.

Plaintiffs (hereinafter collectively referred to as ACORN) rely heavily on U.S. Supreme Court cases which they argue explicitly hold that a "street" is a public forum, and that such holdings implicitly include an intersection. *Members of the City Council v. Taxpayers for Vincent*, — U.S. ——, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 1706–07, 75 L.Ed.2d 736 (1983); *Carey v. Brown*, 447 U.S. 455, 460, 100 S.Ct. 2286, 2289, 65 L.Ed.2d 263 (1980); *Hague v. C.I.O.*, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). Admittedly, the Supreme Court has not directly addressed the question of whether an intersection is a public forum. The cases cited above by ACORN refer to "streets" as public forums, typically in the context of sidewalks and other locales traditionally reserved for public communication. It seems clear, however, that the reasoning and language of the relevant opinions lead to the logical conclusion that the term "streets" cannot be automatically extended to include traffic intersections.

▮ Indeed, the only citation ACORN provides that is on point is to an unpublished opinion in *ACORN v. The City of New Orleans*, 606 F.Supp. 16 (D.La.1984). There the court held that soliciting funds at roadway intersections is protected First

*Party v. Oremus*, 619 F.2d 683 (7th Cir.1980).

Amendment activity in a "traditional public forum." We cannot agree. Analysis of the pertinent authority is simply to the contrary.

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions' ... In these quintessential public forums, the government may not prohibit all communicative activity.

> \*　　\*　　\*　　\*　　\*　　\*

> [However] *Public property which is not by tradition or designation a forum for public communication is governed by different standards.* We have recognized that the 'First Amendment does not guarantee access to property simply because it is owned or controlled by the government' ... *In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view* ... As we have stated on several occasions, 'the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.' (emphasis added).

*Perry Education Assn. v. Perry Local Educators' Assn.*, 103 S.Ct. at 954–55.

Here, the City of Phoenix argues that it does no more than that which *Perry* permits. Evidence at trial supports the City's position.

Testimony showed that the essential purpose of a highway or roadway intersection is the movement of vehicular and pedestrian traffic. Clearly, "by long tradition or by government fiat" such areas are not designated as forums for public communication while in use by vehicular traffic. Testimony further demonstrated the reasonableness of the ordinance whereby the City is attempting to prevent any type of distraction, either on medians or adjacent roadways, which could create a safety hazard. Even ACORN's expert acknowledged that tagging could be considered a distraction. Thus the City can consider traffic safety as a reasonable basis for regulating or prohibiting tagging. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 2893, 69 L.Ed.2d 800 (1981). Even requiring the seven conditions suggested by ACORN to minimize the potential safety problems would be an inadequate solution. The evidence still showed that the mere presence of taggers on the roadway or intersection is a potential safety hazard.

Further, testimony demonstrated one other significant factor. No other groups or individuals have been permitted by the City to solicit employment, business or contributions from drivers at intersections. Therefore, the prohibition against tagging is content-neutral in that it is not prohibited "merely because public officials disapprove the speaker's view." *U.S. Postal Service v. Council of Greenburgh*, 453 U.S. 114, 101 S.Ct. 2676, 2687, 69 L.Ed.2d 517 (1981).

▮ Thus, the City's prohibition against tagging in intersections is both reasonable and content-neutral. Where no public forum is involved these are the only First Amendment challenges to be considered. 101 S.Ct. at 2686 n. 7. Given the safety and traffic considerations, the City has reserved intersections for their intended purposes—movement of vehicular and pedestrian traffic. Under these circumstances, absolute prohibition of tagging in intersections amounts to a permissible regulation.

The City has filed a Motion to Strike ACORN's argument that the ordinance is unconstitutionally vague and overbroad given it seeks to prohibit tagging everywhere, including purportedly safe locations

and sidewalks. The City objects to its consideration because ACORN only first raised this argument in their Pre-Trial Brief Rebutting Defendants' Pre-Trial Memorandum, and Opposing Defendants' [second] Motion for Summary Judgment. This issue was not raised in the Pretrial Order.

■ The Court finds that the City's motion is well taken. ACORN's attempt to raise this issue immediately before trial in a pretrial reply brief and after the Pretrial Order is filed is untimely. Further, the Court previously denied the City's filing on November 16, 1984 of the City's second Motion for Summary Judgment. It was treated as a Pre-Trial Memorandum instead because it was also untimely filed as a Motion for Summary Judgment. On May 4, 1984, the Court ordered that any further Motions for Summary Judgment must be filed within 60 days. The City waited until November 16, 1984 to file their second Motion for Summary Judgment. Therefore, ACORN's attempt at this late date to raise new issues in a pretrial reply memorandum is completely untimely.

■ In any event, there is no evidence to suggest that any activity other than tagging in an intersection was being curtailed as a result of this ordinance. Thus, the ordinance prohibits no more speech than is necessary to accomplish its objective. 104 S.Ct. at 2132.

Accordingly,

IT IS ORDERED that P.C.C. Section 36–101.01 is constitutional as applied to ACORN under the standards enunciated in this Order.

IT IS FURTHER ORDERED granting the City's Motion to Strike.