The INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF NEW ORLEANS, INC.

v.

CITY OF BATON ROUGE and Parish of East Baton Rouge.

Civ. A. No. 86–102–A.

United States District Court, M.D. Louisiana.

March 20, 1987.

J. Arthur Smith, III, Baton Rouge, La., for plaintiff.

W. Michael Stemmans, Asst. Parish Atty., Baton Rouge, La., for defendants.

JOHN V. PARKER, Chief Judge.

An evidentiary hearing has been held upon plaintiff's motion for a preliminary injunction prohibiting defendants, the City of Baton Rouge and the Parish of East Baton Rouge, from enforcing the provisions of Section 96(b) of Title 11 of the Code of Ordinances. Finding that the ordinance is not likely to be determined unconstitutional as applied to the activities of plaintiff's members, the court denies the motion.

The plaintiff Society, a Louisiana corporation, is part of the International Krishna Consciousness movement. The Society and its beliefs originated in India. It is most assuredly a religious movement entitled to the protection of the First Amendment. *See e.g., International Society for Krishna Consciousness, Inc. v. City of Houston,* 689 F.2d 541 (5th Cir.1982). The adherents of the Society believe that in order to glorify God and to enlighten the public generally, they must practice the ritual of sankritan which requires them to publicly distribute religious literature and to solicit financial contributions to further their cause. In Baton Rouge, members of the sect solicit donations from occupants of motor vehicles which are temporarily stopped at traffic lights. Such donations are solicited only at high traffic times, such as the Christmas season, and at the busiest intersections.

In prior years, members of the plaintiff's organization have been threatened with arrest and actually arrested for violation of a local ordinance. In 1980, plaintiff filed suit in this district against these defendants to enjoin the enforcement of the then provisions of § 98(b) of Title 11 of the Code of

Ordinances, and a stipulation was entered in that action that: (1) the ordinance "was declared unconstitutional by the Nineteenth Judicial District Court ... on May 15, 1980" and (2) the parties "agree that the ordinance which was the subject of the afore-described judgment will not be enforced."[1]

On November 23, 1983, the City of Baton Rouge and the Parish of East Baton Rouge adopted a revised and amended version of § 96 of Title 11 which prohibits solicitation from "the occupant of any vehicle."

The president of the Society, Mr. Mistretta, determined that the sankritan ritual would be performed in Baton Rouge during the 1986 Christmas season and accordingly several members of the Society were dispatched from New Orleans to Baton Rouge to solicit donations at the busiest intersections. All were dressed in Santa Claus costumes. Mr. Mistretta testified that all members who participated were carefully instructed regarding safety, particularly that they should stay upon the sidewalk or neutral ground if at all possible. Defendants introduced into evidence a copy of a local newspaper dated December 13, 1986, which contains on the front page a photograph depicting a female wearing a Santa Claus costume standing beside a vehicle in a line of vehicles. Both feet are planted firmly in the roadway, not the neutral ground. The individual was identified by Mr. Mistretta as one of his members who did indeed solicit donations in Baton Rouge at that time. Accordingly, it is clear that the solicitors do not always stay upon the sidewalk or neutral ground.

During the 1986 Christmas season, Krishna members who were soliciting donations at intersections were warned by Baton Rouge police officers that their activities violated a local ordinance and that they would be arrested if they persisted. This action in this court was then commenced.

No arrests were actually made, possibly because of the pending action.

The plaintiff moved for summary judgment on the basis that the defendants had previously stipulated in the 1980 action that Section 96(b) would not be enforced. That motion was denied because the 1983 Section 96(b), although it covers the same conduct, is not the same ordinance. The 1983 ordinance specifically amended the old ordinance; hence, it cannot be the "same."[2]

Mr. Mistretta denies that such solicitation is dangerous or that it significantly impedes the flow of traffic. Mr. Webb, the traffic engineer for the City, testified that solicitation of donations from the occupants of motor vehicles which are temporarily stopped at traffic lights distracts the drivers, creates danger to both the solicitors and the solicited, as well as to other traffic, and impedes the orderly flow of traffic. The defense presented evidence that a newspaper vendor, soliciting sales from a sidewalk, was involved in a fatal accident at the intersection of an I–10 exit with Government Street in Baton Rouge. Although no specific date was established, it is apparent that this death occurred before November 23, 1983, because the 1983 ordinance makes reference to that accident.

The preamble to the 1983 ordinance reads as follows:

WHEREAS, a problem has been identified with persons attempting to solicit rides, employment, business, or charitable contributions from the occupants of moving vehicles on certain City streets; and

WHEREAS, this practice has been identified as being unsafe for both the person engaging in the solicitation and for traffic in general; and

WHEREAS, the activity of soliciting rides, business, employment, or charitable contributions from the occupants of

---

1. I was not favored with information as to *why* my brother of the state court declared the ordinance unconstitutional, or even which constitution, state or federal, it contravened.

2. Prior to the amendment the ordinance provided: "No person shall stand on a highway for the purpose of soliciting employment, business, or contributions from the occupant of any vehicle." The prior ordinance covers the precise same activity as the 1983 amendment and is verbatim to the state statute involved in *United States Labor Party v. Oremus,* 619 F.2d 683 (7th Cir.1980); infra.

vehicles constitutes an impediment to the normal and safe flow of traffic in the City of Baton Rouge; and

WHEREAS, this activity has in the past resulted in accidents one of which resulted in the death of the person engaged in the soliciting activity.

Section 96(b) as amended, reads as follows:

"(b) No person shall be upon or go upon any street or roadway or shall be upon or go upon any shoulder of any street or roadway nor shall any such person be upon or go upon any neutral ground of any street or roadway for the purpose of soliciting employment, business, or charitable contributions of any kind from the occupant of any vehicle."

Plaintiff claims that the threatened enforcement of the ordinance infringes upon the free exercise of religion by its members in violation of the First Amendment, made applicable to the states by the Fourteenth Amendment.

Plaintif clearly has standing to raise the exercise of religion issues here presented. *See ACORN v. City of Phoenix,* 798 F.2d 1260 (9th Cir.1986). It is clearly established that solicitation of funds is as much a part of the free exercise of religion as is proselyting. *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

Plaintiff argues that the public streets, sidewalks and neutral grounds constitute "public forums" which may be freely used for purposes of assembly, communication and discussion of public questions. Numerous decisions of the Supreme Court support that general proposition. See, e.g., *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Defendants argue that

at least the roadways of public streets are intended for movement of traffic and goods, not for discussion of public issues and that access to the property, although publicly owned, may be constitutionally limited, citing *United States v. Belsky,* 799 F.2d 1485 (11th Cir.1986), where limited access to the public passage ways into a post office was sustained.

It is important to clearly set forth precisely what is at issue here. The only activities in which plaintiff's disciples are engaging and the only activity in which they seek to engage, is solicitation of the operators of motor vehicles at traffic lights at heavily traveled intersections at peak traffic hours. Consequently, no other conduct which the Baton Rouge ordinance might or might not reach is here involved.

We readily accept plaintiff's assertion that "public places historically associated with the free exercise of expressive activity, such as streets, sidewalks, and parks are considered, without more, to be 'public forums'...." *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Plaintiff cites *ACORN v. City of New Orleans,* 606 F.Supp. 16 (E.D.La.1984) as holding that busy intersections are nevertheless "public forums" where the authority to restrict expressive conduct is limited and only reasonable, content-neutral time, place, and manner regulations may be enforced. *United States v. Grace,* supra. Defendants cite *ACORN v. City of Phoenix,* 603 F.Supp. 869 (D.Ariz.1985) as holding to the contrary.

This court concludes, as did the Ninth Circuit in *ACORN v. City of Phoenix,* 798 F.2d 1260 (9th Cir.1986), that it is unnecessary to resolve the issue whether areas of public streets which are open for and in use by motor vehicles retain their character as public gathering places. *Cf. United States Labor Party v. Oremus,* 619 F.2d 683 (7th Cir.1980) (where a state statute prohibiting standing on a highway for the purpose of soliciting employment, business or contributions from the occupants of vehicles was involved. Although no direct constitutional attack was made upon the statute, the

court rejected First Amendment arguments similar to those made by plaintiff here).

The ordinance here in question, although ponderous and redundant, prohibits one specific activity: that of soliciting the occupant of any motor vehicle for employment, business or "charitable contributions" while standing in the street[3]. Assuming without deciding that the intersections in which plaintiff's members desire to solicit are "public forums," this court concludes that the ordinance is a reasonable time, place and manner regulation which is content-neutral and which serves important public safety and traffic flow concerns.

In *ACORN v. City of Phoenix*, 798 F.2d 1260 (9th Cir.1986), the court considered an ordinance (somewhat better drafted than the Baton Rouge ordinance) which prohibited precisely the same conduct and concluded that it could be justified even under the more rigorous standards applied to the regulation of expression in traditional public forums. This ordinance, like the Phoenix ordinance, does not ban the solicitation of contributions altogether but rather regulates the local and permissible targets for such activities, occupants of operational motor vehicles, and it imposes no restrictions on other forms of communication, such as oral advocacy or distribution of literature, even to occupants of vehicles. On its face, this ordinance does not single out any group or the content of any speech and it applies even handedly to every organization or individual, regardless of viewpoint, which would desire to solicit contributions, business or employment from the occupants of vehicles traveling on the streets of the City of Baton Rouge.

It requires neither towering intellect nor an expensive "expert" study to conclude that mixing pedestrians and temporarily stopped motor vehicles in the same space at the same time is dangerous. The Baton Rouge fatal accident demonstrates that solicitation of the occupants of motor vehicles

by pedestrians creates a potential safety hazard because of the consequent distraction of the drivers. One must bear in mind that a motor vehicle temporarily stopped at a traffic light is in operation—its engine is running and the transmission is usually in gear so that if the distracted driver's foot slips off the brake, the vehicle will begin to move. It may run over the solicitor or it may rear-end the car ahead of it or otherwise cause an accident. The City declares in the preamble to the ordinance that this practice has been identified as being unsafe for both the person engaging in the solicitation and for traffic in general. The evidence fully substantiates that conclusion.

Although plaintiff argues that less restrictive measures are available, such as limiting the number of solicitors, requiring them to wear bright clothing or to stay upon the neutral ground, etcetera, there is no evidence to support that conclusion. The modern motor vehicle is capable of wreaking enormous injury and damage in only seconds and the City's conclusion that solicitation of occupants of vehicles poses a significant traffic hazard is entirely correct. This court concludes that there is no way that such activities can be made "safe."

The other foundation upon which this ordinance rests is that these activities disrupt the orderly flow of traffic. The driver who fumbles to unfasten his seat belt so that he can get into his pocket for a handful of coins to pass out the window and who does not move off promptly when the light turns to green, holds up those vehicles behind him and the longer the line, the worst the delay. The traffic engineer was very explicit that these particular activities invariably cause delays and disruptions to traffic. This ordinance is narrowly drawn and aimed at the peculiarly disruptive nature of fund solicitation from occupants of vehicles causing delays and interference with vehicular traffic.

---

**3.** The term "street" is defined by the Code of Ordinances to include the entire width from right of way line to right of way line (Section 11.1), and thus is all inclusive, including the "roadway" or traveled surface (Section 11.1), as well as shoulder and neutral ground. "Street"

and "highway" are synonymous. Thus, when the ordinance prohibits standing on the "roadway, shoulder or neutral ground," it is redundant because standing anywhere in the street to conduct such activities is already prohibited.

It should be noted that this holding does not conflict with that of my colleague from the Eastern District in *ACORN v. City of New Orleans*, 606 F.Supp. 16 (E.D.La. 1984), because the ordinance in that case was not limited to solicitation of the occupants of motor vehicles; it also prohibited solicitation of other pedestrians, as well as other conduct. *Id.* at 22.

Applying the well established rule that plaintiff's first requirement for a preliminary injunction is to establish a substantial likelihood that he will prevail upon the merits, *Henry v. First National Bank*, 595 F.2d 291 (5th Cir.1979), it is obvious that plaintiff has not done so. Accordingly, the motion for the preliminary injunction is hereby DENIED.