**William BONIN, Petitioner,**

v.

**Daniel VASQUEZ, et al., Respondents.**

**No. CV 91–0693–ER.**

United States District Court,
C.D. California.

Nov. 9, 1992.

Fern M. Laetham, State Public Defender, Barry Helft, William D. Freeman, and Michael H. Roquemore, Deputies State Public Defenders, San Francisco, CA, for petitioner.

Daniel E. Lungren, Atty. Gen., George Williamson, Asst. Atty. Gen., Gary Schons, Sr. Asst. Atty. Gen., Steven Zeigan, and Esteban Hernandez, Deputies Attys. Gen., San Diego, CA, for respondents.

### ORDER RE: PETITIONER'S MOTION TO AMEND THE PETITION FOR WRIT OF HABEAS CORPUS

RAFEEDIE, District Judge.

On August 18, 1992, petitioner moved to amend his petition and add six new claims pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) states that once a responsive pleading has been served, "a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The grant or denial of a motion to amend "is within the sound discretion of the District Court...." *Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir.1978).

In this case, respondent does not consent to the amendments, and, as discussed in detail below, the Court DENIES petitioner's request to amend; therefore, the Court will not consider petitioner's six additional claims.

Despite the liberal language of Rule 15(a), there exists a number of valid reasons for denying petitioner's motion to amend. For example, a court need not allow an amendment at this stage of the proceedings if doing so will cause undue delay or if the court finds that the motion is brought in bad faith or is a dilatory move by petitioner. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Similarly, a district court has no obligation to disrupt proceedings by honoring a last-minute request to amend a petition filed 19 months earlier. *See Hodges*, 570 F.2d at 649. A denial is also warranted when the moving party had an earlier opportunity to amend the petition. *See United States Labor Party v. Oremus*, 619 F.2d 683, 692 (7th Cir.1980).

A review of the proceedings in this case demonstrates that each of the reasons discussed above is present and justifies a denial of the motion to amend. Petitioner first filed a petition for writ of habeas corpus on February 7, 1991. In March 1991, respondent moved to require petitioner to identify all known claims, both exhausted and unexhausted. Petitioner vigorously opposed the motion, in part because he argued that his petition was full and complete.

On April 19, 1991, in response to the ruling in *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the

Court allowed petitioner to amend his petition. The Court gave petitioner until May 13, 1991 to file an amended petition in either or both of the cases pending before the Court. On May 15, 1991, following a short extension of time granted by the Court, petitioner moved to amend only the Orange County petition; petitioner did not move to amend the Los Angeles petition.

Seven months later, on December 23, 1991, petitioner moved the Court to amend the Los Angeles petition without offering any justification for his delay. The Court denied the motion on two grounds. First, the amendments were untimely given the Court's April, 1991 order to file amendments by May 13, 1991. Second, the Court found the amendments to be an abuse of the writ since the five new claims were all ones which petitioner knew about or should have known about at the time he filed his initial petition.

In January, 1992, the Court held an evidentiary hearing on some of petitioner's claims. Following the hearing, the Court took the petition under submission. At that point all briefing had concluded, all evidence had been presented, and all that remained was the Court's final order and opinion.

On July 23, 1992, the Court denied the Orange County petition and entered final judgment in that case. 794 F.Supp. 957. Less than one month later, on August 18, 1992, petitioner filed simultaneous motions in both his Los Angeles and Orange County cases. He sought relief from judgment in Orange County in order to add six new claims and sought to amend his Los Angeles petition with the same six claims.

On September 29, 1992, the Court denied petitioner's motion for relief from judgment in the Orange County case. In doing so, the Court held that petitioner's actions amounted to an abuse of the writ. The Court now rules that petitioner's amendments in the Los Angeles case also amount to an abuse of the writ.

The principles that underlie the notion of abuse of the writ in subsequent petitions compel a similar finding under the circumstances of this case. First, petitioner brought his motion long after the work in the case had concluded and seven months after the Court took the petition under submission. None of the new issues are exhausted. Consequently, if the Court were to allow the amendments, petitioner would need to return to state court to exhaust his claims and then return to this Court to brief the claims. Thus, allowing amendments at this time would create an unreasonable delay in a case that has already been pending for 19 months.

Second, petitioner brought the motion only after the Court denied the petition in his Orange County case. Coincidentally, petitioner happened to uncover six "new" claims mere weeks after his petition was denied. Petitioner, not surprisingly, sought to add the six new claims in both cases, not just the case that was denied. The Court cannot help but assume bad faith on the part of petitioner.

Third, petitioner already had one opportunity to amend his petition. Petitioner took ten months to respond to the Court's invitation; when he did respond, he failed to raise any of the six issues he now wishes to add, issues which, as demonstrated below, were clearly available either from the record or with very little investigation.

Fourth, the basis for each of the new claims was available at the time petitioner filed his initial petition either from the record or with the briefest of investigation. In claim A, petitioner argues that the prosecution knowingly presented the perjured testimony of informant Lloyd Carlos Douglas and failed to disclose material impeaching evidence to the defense. In arguing this claim, petitioner relies heavily upon information derived from the Los Angeles' jailhouse informant scandal that started in October, 1988 and culminated in a Grand Jury report released in July, 1990. Indeed, at least 20 exhibits (newspaper articles, memoranda, and television show transcript) presented by petitioner in support this claim carry dates between 1988–1990. This information, therefore, was available to petitioner prior to the filing of his petition in February, 1991.

In claim B, petitioner alleges that Charvet failed to present a witness, Roy Norris, who could impeach informant, Douglas, because Charvet also represented Norris who had pled guilty to multiple murder charges. The trial transcripts show that Charvet questioned Douglas at trial about statements Douglas made about Roy Norris. [LART 13/3917]. The transcripts also show that Douglas testified that Charvet represented Norris. [LART 13/3977]. Therefore, petitioner had the information that comprises the substance of this claim at the time he filed his petition in February, 1991.

Petitioner's third claim, claim C, alleges ineffective assistance of counsel for failing to have prosecution witness, Greg Miley, declared incompetent to testify, or alternatively, for failing to introduce expert testimony concerning the unreliability of Miley's testimony. The underlying basis for this claim—Miley's mental deficits—was readily apparent from the record. Even a cursory review of Miley's testimony would alert the reader that Miley's mental acuity was less than average. In addition, the record reflects Miley's inability to read since Miley, unlike the other witnesses at the trial, needed to have the oath read to him rather than reading it aloud himself. [LART 12/3592]. Similarly, the Orange County trial transcripts contain specific examples of Miley's below average intelligence.[1] For example, during direct examination, Miley testified that he could not read or write and that he had never been able to do so. [OCRT 54/8067]. Miley also stated that his IQ was 56. *Id.* In sum, the transcripts provided a basis for this claim; therefore, petitioner could have raised this claim when he initially filed his petition.

In claim D, petitioner contends that Miley was subjected to hypnosis prior to testifying. Petitioner acquired this information from a post-judgment (Orange County case) interview with Miley. Miley was a key prosecution witness. Due diligence would seem to mandate an interview with such an important witness at a significantly earlier juncture than occurred in this case. The Court finds that the ease with which petitioner acquired this information gives rise to an inference that petitioner should have discovered this issue prior to filing his initial petition.

Claim F [2] involves allegations of prosecutorial misconduct concerning the testimony of prosecution witness, James Munro. Once again, the underpinnings of this claim—that Munro was threatened and that he was made promises in exchange for his testimony—were available in the record. Indeed, the record in both Orange County and Los Angeles is replete with such evidence. *See e.g.* [OCRT 56/8215] (Munro testified that he lied during the Los Angeles trial because he was threatened by the prosecutor and the homicide investigators); [OCRT 64/9130] (Munro discussed threats and his efforts to go to federal prison); [LART 15/4419] (Munro discussed threats and efforts to get into federal custody).

In the same vein, the "further investigation" required by petitioner to flesh out claim F was also easily conducted. Petitioner cites the transcripts of Munro's plea session and sentencing, and also presents a declaration written by Munro after a post-judgment (Orange County case) interview concerning petitioner's literary rights agreement claim.[3] Petitioner could have acquired Munro's transcripts anytime in the past decade. In addition, it took petitioner less than two weeks after the entry

---

1. The Court notes that the same entity—the Office of the State Public Defender—has represented petitioner in both his Orange County and Los Angeles cases beginning with the automatic appeal stage.

2. Claim E realleges the facts of claim C and claim D. Accordingly, the same discussion applies to claim E.

3. The Court questions why petitioner waited until after the discovery period, after the evidentia-

ry hearing, and after the petition had been under submission for eight months before interviewing Munro regarding his knowledge of the literary rights agreement. Munro testified during the Orange County case that petitioner told him he was going to be receiving money from a book about his life that was to be written by Mary Neiswender. [OCRT 64/9145–9147]. Certainly this testimony put petitioner on notice that Munro might have information relevant to proving a literary rights agreement.

of judgment in the Orange County case to contact Munro and acquire "new" information. On the basis of the evidence from the record and the ease with which petitioner could have obtained his "new" information, the Court finds no reason why petitioner could not have raised this claim in his initial petition.

In sum, the Court finds that the circumstances under which petitioner brought his motion to amend demand that the Court deny petitioner's motion. Accordingly, petitioner's Motion to Amend the Petition is DENIED.

IT IS SO ORDERED.