ACORN and William Coles

v.

The CITY of NEW ORLEANS, et al.

Civ. No. 83–4859.

United States District Court,
E.D. Louisiana.

June 4, 1984.

**18**

Stephen R. Bachmann, Bachmann & Wletchek, New Orleans, La., for plaintiffs.

Galen S. Brown, New Orleans, La., for defendants.

WICKER, District Judge.

This matter came before the Court on a former date. Plaintiff, the Association of Community Organizations for Reform Now (ACORN) sought to enjoin defendants City of New Orleans (the City), its Police Chief Henry Morris, and its Finance Director Erroll Willims from enforcing Chapter 38, Section 182 (§ 38–182) of the New Orleans City Code.[1] After considering the testimony, exhibits, briefs of counsel and the law, the Court finds that § 38–182 is unconstitutional under the First Amendment and hereby permanently enjoins the defendants from enforcing that section.

ACORN is a non-profit association of low and moderate income people which is active in 26 states. Its purpose is to advance the interests of its membership in areas of social and political concern such as utility rates, hazardous materials and park facilities.

ACORN engages in three methods of information dissemination and fundraising to promote its cause: canvassing, cannistering and tagging. ACORN members canvass by seeking contributions door-to-door. Cannistering involves approaching persons on the sidewalk, asking them for their signatures on petitions and requesting contributions.

When tagging, members approach cars which are stopped at traffic lights. The ACORN member gives the driver a flyer which describes the association's work and which indicates how someone may contact ACORN to acquire more information or to join its cause.[2] The member makes a short statement about a particular issue of concern to ACORN and asks the driver for a contribution.

The hearing testimony revealed that ACORN has been tagging in New Orleans since April of 1982. Members wear bright orange reflective vests and do not tag at night. No one under twelve years of age tags for ACORN. All taggers are accompanied by supervisors. They are required to review safety rules and to know how

1. ACORN also sought to enjoin enforcement of Chapter 14 of the City Code, a permit scheme for charitable solicitation. Counsel for the City and ACORN have entered into a consent decree declaring Chapter 14 unconstitutional in light of *Village of Schaumberg v. Citizens for a Better* *Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). Record Doc. 12. This opinion, therefore, is limited to consideration of the constitutionality of § 38–182.

2. Plaintiff's Exhibits 1, 2, 3, 4.

long particular traffic lights are before working at an intersection. They are told roughly how many cars can be approached per signal cycle and are instructed that when the signal changes to yellow, they are to return to the sidewalk. Finally, members are directed to obey the police at all times. There was no testimony which would indicate that any accident or injury has been caused by ACORN's tagging operations in New Orleans or elsewhere.

ACORN regularly engaged in tagging each weekend without disturbance until August of 1983. On August 15, Superintendent Morris issued a letter to the police department's commanding officers which indicated that there had been a noticeable increase in the amount of tagging in New Orleans which had impeded the orderly and safe flow of traffic on City streets. Accordingly, the letter directed police officers to "strictly enforce" § 38–182 which section makes such solicitation unlawful.[3]

On August 16 ACORN was sent a letter from the City which directed it to obtain a solicitation permit.[4] On August 18 ACORN member Emery Johnson was cited by a City police officer for violating § 38–182.[5] Although § 38–182 had been in existence since 1968, Deputy Police Chief Woodfork testified that it had not been enforced prior to 1983.

ACORN claimed that the City's pattern of enforcement is arbitrary and capricious and denies ACORN due process of law.

Its members testified that ACORN was singled out for prosecution, presumably since it is a political, rather than charitable, organization and since it promotes what many view as unpopular causes. The Deputy Chief testified, however, that enforcement of § 38–182 is not aimed selectively at particular groups, but that the Police Department began enforcing the section following recent complaints from concerned citizens. He also stated that the City has a separate ordinance which prohibits obstruction of traffic, which ordinance is not specifically directed at speech activity as is § 38–182.

Section 38–182 prohibits persons from standing in a roadway or on a neutral ground[6] for the purpose of soliciting funds.[7] Plaintiffs brought this action under 42 U.S.C. § 1983, contending that § 38–182 is unconstitutional both on its face since it prohibits expressive activity which is protected under the First Amendment and as applied since the police department has enforced the ordinance selectively against ACORN in violation of the Fourteenth Amendment.

Public places which have historically been associated with the free exercise of expressive activities, such as streets, sidewalks and parks, are considered "public forums" where the government's ability to permissibly restrict expressive conduct is strictly limited.[8] *U.S. v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 1706–07, 75 L.Ed.2d

---

3. City Exhibit 1.

4. Exhibit B to the Complaint.

5. Exhibit C to the Complaint.

6. The "neutral ground" is the median area in a divided street which separates traffic flowing in opposite directions. In New Orleans, the neutral grounds vary considerably. Some are only a step or two wide while others may be one hundred feet or more across. They may be tree laden and therefore difficult to see over, dotted with interspersed bushes, or simply wide expanses of grass. They may be on busy downtown boulevards such as Poydras Street, fast cross-town arteries such as Robert E. Lee Boulevard or Broad Street or slow uptown residential avenues such as Audubon Place which scarcely receive any traffic at all.

7. 828 M.C.S. § 38–182 states:

No person shall stand in the roadway for the purpose of soliciting a ride from the driver of any vehicle, and no person shall stand in a roadway or upon a neutral ground for the purpose of selling any produce or commodity to the occupants of vehicles, or for the purpose of soliciting funds.

8. The government may prohibit communication entirely in areas that are not public forums so long as it acts reasonably and the prohibition is content-netural. *U.S. Postal Service v. Council of Greenburgh Civic Association*, 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, n. 7, 69 L.Ed.2d 517 (1981); *Greer v. Spock*, 424 U.S. 828, 838–39, 96 S.Ct. 1211, 1218, 47 L.Ed.2d 505 (1976).

736 (1983); *Carey v. Brown,* 447 U.S. 455, 460, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980); *Hague v. C.I.O.,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). The Supreme Court has clearly stated that speech does not lose its protected status because the speaker seeks a contribution. Rather, solicitation of funds unquestionably is protected expression under the First Amendment. *Heffron v. ISKCON,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980); *ISKCON v. City of Houston,* 689 F.2d 541, 545 (5th Cir.1982).

■ In seeking to solicit funds at roadway intersections, therefore, ACORN wishes to engage in protected First Amendment activity in a traditional public forum. The issue here is not whether ACORN's activities are protected under the First Amendment, but whether the City has exercised its power to regulate solicitation in a manner consistent with constitutional requirements.

■ The First Amendment does not guarantee the right to communicate views at all times and places or in any manner that may be desired. *See e.g., Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (upholding ban on political campaigning on military base); *Adderly v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (upholding prohibition on demonstrations at a jail). Solicitation of financial support, like other protected expression, is subject to reasonable regulation. This regulation, however, must be designed and enforced in a manner which does not intrude upon the rights of free speech. *Hynes v. Mayor and Council of the Borough of Oradell,* 425 U.S. 610, 616–17, 96 S.Ct. 1755, 1758–59, 48 L.Ed.2d 243 (1976). Regulation must be "undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or

for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information would likely cease." *Village of Schaumberg, supra,* 444 U.S. at 632, 100 S.Ct. at 834.

■ ACORN contends that § 38–182 violates the rights of its solicitors since the section is overbroad and the City could accomplish its goals by less intrusive means. "A law is overbroad if it 'does not aim specifically at evils within the allowable area of control ... but sweeps within its ambit other activities that constitute an exercise' of First Amendment rights." *Beckerman v. City of Tupelo, Mississippi,* 664 F.2d 502, 507 (5th Cir.1981) *citing Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). A law will not be voided, however, unless its overbreadth is substantial in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma,* 413 U.S. 601, 605, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *Beckerman v. City of Tupelo, Mississippi, supra,* 664 F.2d at 507; *Fernandes v. Limmer,* 663 F.2d 619, 633 (5th Cir.1981), *cert. denied,* 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982).

■ In the First Amendment context, courts disregard the normal rule which precludes persons whose conduct may validly be prohibited from challenging a law as it applies to others since there is a possibility that protected speech may be inhibited by the overly broad reach of the statute. A person whose speech is unprotected, thus, may challenge a law as facially invalid by showing that it substantially abridges rights of others not before the court.[9] *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); *Village of Schaumberg, supra,* 444 U.S. at 634, 100 S.Ct. at 834; *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1217 (5th Cir.1982). When First Amendment rights are involved, the ordinance's proponent bears the burden of proving its

---

**9.** The Court therefore need not determine whether ACORN's in-the-street soliciting activity

could be prohibited by a narrowly drawn statute.

constitutionality. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *ACORN v. City of Frontenac,* 714 F.2d 813, 817 (8th Cir.1983).

Prior cases have not determined whether a city may prohibit persons from soliciting funds from cars which are stopped at street lights.[10] The Fifth Circuit has decided three cases, however, which provide analytical guidance.

In *Fernandes v. Limmer,* the Fifth Circuit considered a Krishna religion devotee's attack on the constitutionality of an ordinance governing solicitation at the Dallas/Fort Worth Airport. The court first held that the airport terminals are public forums since the character of the areas, the pattern of usual activity, the nature of their essential purpose, and the population who take advantage of them make them appropriate places for communication of views on issues of political and social importance. 663 F.2d at 626. One portion of the city's licensing scheme permitted charitable solicitation on airport sidewalks but prohibited solicitation at all times inside terminal buildings. The court held that by completely forbidding solicitation in the terminal buildings, the Dallas/Fort Worth ordinance swept substantially beyond the ambit of permissible regulation. Rather, the airport had to provide access to those areas where solicitation would not interfere with airport functions.[11] 663 F.2d at 627, 633–34.

In *Beckerman v. City of Tupelo, Mississippi* the Circuit considered the constitutionality of Tupelo's parade ordinance. One section prohibited issuing a permit for parades or demonstrations which would take place after 6:00 p.m. The court stated that Tupelo could regulate the times of parades and even restrict them to daylight hours, but any regulation must be drawn to insure minimal intrusion on First Amendment rights. The court held that since it remains light past 6:00 much of the year in Tupelo, the ordinance was unconstitutionally overbroad. To survive constitutional scrutiny, the ordinance must either fluctuate with the time of sunset, vary accordingly to the seasons, or be set at a later time to accommodate year-round First Amendment interests. 664 F.2d at 512.

Another section of Tupelo's ordinance prohibited the use of sound trucks and sound amplification equipment at any time on the streets in areas zoned residential. Although sound equipment may be incompatible with actual residential areas, the zoning ordinance extended to places which included structures other than houses, such as churches and schools. Since it restricted speech in areas beyond those deservedly protected, the court held that the section was unconstitutionally overbroad. 664 F.2d at 516.

In *Dallas ACORN v. Dallas County Hospital District,* 670 F.2d 629, 632–33 (5th Cir.1982), similarly, the Circuit stated that even a hospital may not completely forbid distribution of critical literature on its grounds, but may only prevent expression where it is fundamentally incompatible with the hospital's normal activity at a particular time. The staff could restrict distribution in the outpatient clinic and other areas where medical services were actually performed, but it was overbroad to prohibit speech within the hospital in those areas where its operations would not be disturbed.

[11] An ordinance which prohibits all solicitation for funds in all streets and on all neutral grounds, like those in the Fifth

10. *U.S. Labor Party v. Oremus,* 619 F.2d 683 (7th Cir.1980), in addition to being from another circuit, is distinguishable. First, the ordinance there concerned only solicitation by persons standing in the highways, not by persons on city streets or on neutral grounds. 619 F.2d at 688. Secondly, the solicitors there did not contest the constitutionality of the statute in question. 619 F.2d at 686.

11. The Court's holding was limited to declaring unconstitutional the complete denial of access to the terminal forum. It did not suggest that reasonable regulation of time, place and manner of solicitation there would be impermissible. 663 F.2d at 634–35.

Circuit cases, sweeps too broadly. The ordinance prevents solicitation from pedestrians on those French Quarter streets which are often closed to vehicular traffic. It prohibits it during Mardi Gras season when many streets are barricaded, during street fairs, street running races, parades, demonstrations and other activities where no vehicles are present. Nor does it provide a means for persons to apply for permission to solicit during these events. The ordinance forbids solicitation on neutral grounds regardless of the part of town, the number of cars passing, the speed of traffic, the width of the neutral grounds, the presence of a stop sign or traffic signal, or the color of the light. It does not consider the number of solicitors, their visibility, the size of their signs, the time of day or the day of the week.

The ordinance as written does not distinguish between solicitors who step off the neutral ground, those who stand on the neutral ground and solicit from cars stopped adjacent to them at traffic lights, and those who wish only to solicit from fellow neutral ground pedestrians.[12] There is no apparent danger posed by someone soliciting from another person who is also standing on the neutral ground. In addition, in instances when there is little traffic and a sufficiently wide neutral ground so that there is no likelihood of persons slipping inadvertently into the stream of oncoming vehicles, solicitation of funds from drivers may not pose a significant danger.[13] It need not slow traffic or block the view of drivers. So long as the solicitor stays out of the street when traffic is moving and does not unduly harass the driver when stopped, such activity will not endanger passengers or pedestrians any more than would a picket line or children playing in the neutral ground.

A city has no greater right to completely prohibit solicitation at all times and places in its streets, which are traditional public forums, than it does to forbid such activity in all parts of its airports and hospitals which are not. Since the ordinance forbids numerous expressive contacts which are constitutionally protected and which do not jeopardize the governmental interest asserted, it is substantially overbroad.

The City argues contrarily, however, that it may restrict solicitation since the ordinance is merely a time, place and manner restriction designed to promote safety and convenience. This argument is unpersuasive. Regulations of time, place and manner must be reasonable, *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *Beckerman, supra,* 664 F.2d at 516, and must be narrowly drawn to serve significant governmental interests without unnecessarily interfering with First Amendment freedoms,[14] *U.S. v. Grace, supra,* 461 U.S. at 177, 103 S.Ct. at 1707; *Village of Schaumberg, supra* 444 U.S. at 637, 100 S.Ct. at 836. "Carefully tailored restraints designed to further legitimate governmental interests in preserving the forum for the normal pattern of activities conducted there are constitutionally acceptable. An outright ban on the use of the forum for expressive purposes, on the other hand, can seldom, if ever, be justified."[15] *Fernan-*

12. The ordinance forbids selling items only to the occupants of vehicles, yet prohibits all solicitation, regardless of whether one seeks funds from drivers or pedestrians.

13. ACORN's members testified in this regard that they solicit only on weekend days when traffic is generally less congested.

14. Reasonable ordinances must also leave open ample alternative means of communication. *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 535, 100 S.Ct. 2326, 2332, 45 L.Ed.2d 319 (1980). And if the exclusion is content-based, the government must demonstrate that the regulation is necessary to serve a compelling state interest. *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983); *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981).

15. Nor can the City claim that it may prohibit solicitation on neutral grounds since ACORN members may exercise their rights to solicit elsewhere. One is not to have the exercise of his or her "liberty of expression in appropriate places abridged on the plea that it may be exer-

*dez v. Limmer, supra,* 663 F.2d at 633. "The crucial question is whether the manner of expression is basically incompatible with the normal activities of a particular place at a particular time." *Beckerman, supra,* 664 F.2d at 516, *quoting Grayned, supra,* 408 U.S. at 116, 92 S.Ct. at 2303.

Section 38–182 is designed to insure the safety of pedestrians and automobile passengers and to promote the free-flow of traffic. These are legitimate governmental objectives. *Heffron, supra,* 452 U.S. at 650, 101 S.Ct. at 2565; *Grayned, supra,* 408 U.S. at 115–16, 92 S.Ct. at 2303. The City clearly may regulate to prevent individuals from obstructing traffic and may punish those who do.

██ The ordinance, however, is not carefully drawn to meet these interests. While an absolute prohibition of solicitation may be warranted on Interstate 10 where cars travel in excess of 60 miles per hour and do not stop, the same, as indicated above, cannot be said of all streets in New Orleans. In numerous instances, solicitation on streets and neutral grounds may be compatible with the normal use of these facilities at a particular time.[16] The ordinance simultaneously has been drawn too narrowly to meet the City's needs. At numerous intersections in New Orleans children enter the streets to wash the windshields of cars stopped at traffic lights. Such activity creates a greater danger to safety than tagging since children are involved and since they walk in front of vehicles to wash from both sides of the car. Yet, such strictly commercial activity, which carries no constitutional protection, is not covered by the ordinance since it is neither a sale of a commodity, nor solicitation.

██ In addition, for an ordinance to pass constitutional muster as a time, place and manner regulation, the government has the burden of showing that it has employed the means least restrictive of protected First Amendment activity.[17] *Schad v. Borough of Mount Ephraim, supra,* 452 U.S. at 70–71, 101 S.Ct. at 2183–84; *Village of Schaumberg, supra,* 444 U.S. at 637, 100 S.Ct. at 836. Again, the City has fallen short. The Deputy Police Chief testified that the City has an ordinance which prohibits the obstruction of traffic. This is the proper manner of promoting the interest in public safety and convenience, rather than by prohibiting speech directly. Ordinances which penalize obstruction, interference with the view of drivers, or other actions which create a hazard to traffic·safety restrict all activities which may actually pose a danger while leaving citizens the liberty to engage in protected speech in those manners which do not conflict with the City's interests. The City therefore can easily design a statute which is less restrictive of free speech simply by directing the ordinance at the potential evil rather than at a manner of expression. Even if the ordinance were not overbroad, § 38–182 would be unconstitutional since it is not a reasonable time, place and manner regulation.

If the City wishes to provide further guidance to solicitors, it may do so by enacting true time, place and manner restrictions, rather than this total ban on expression. It may prohibit solicitation during certain hours or on certain streets, either by name or by limiting tagging to areas with a particular maximum speed limit. The City may require high visibility vests, set a minimum age for taggers, limit

cised in some other place." *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 151–52, 84 L.Ed. 155 (1939).

**16.** A city may provide for the orderly control of travel on streets to insure the safety and convenience of its citizens and it may punish conduct which violates a valid law. However, a person who is rightfully on a street left open to the public "carries with him there as elsewhere the constitutional right to express his views in an

orderly fashion." *Jamison v. Texas,* 318 U.S. 413, 416, 63 S.Ct. 669, 671–72, 87 L.Ed. 869 (1943).

**17.** In *Schneider v. State,* 308 U.S. 147, 164, 60 S.Ct. 146, 152, 84 L.Ed. 155 (1939) the Court stated that the government must exercise the less restrictive means, even if they are less convenient and efficient methods of addressing the state's legitimate interest.

the number of taggers per intersection, require the presence of supervisors, prohibit tagging in areas where the neutral ground is insufficiently wide, or forbid signs above a designated height. The City may allow tagging only at traffic lights, require that taggers return to the neutral ground when the light changes to yellow or, if actually warranted, forbid solicitors from entering streets during the hours they are open to vehicular traffic. Any of these regulations would be less restrictive methods for the City to address its interests.[18]

■■■ These suggestions are merely that. It is not the role of this Court to determine what regulation is necessary or to rewrite this ordinance for the City of New Orleans. The Court recognizes that regulation in this area is legitimate and desirable and encourages the City to formulate appropriate limitations which are in keeping with constitutional demands. However, the Court is limited to deciding the particular controversy before it. *See Fernandes v. Limmer, supra,* 663 F.2d at 626. What the City may not do is prevent solicitation on all streets and neutral grounds without making an earnest attempt to accommodate legitimate speech interests through careful drafting.[19]

■■■ ACORN also alleged that the City applied § 38–182 discriminatorily against it in violation of the equal protection clause of the Fourteenth Amendment. Since the ordinance does not on its face discriminate on the basis of the content or source of speech,[20] plaintiff must prove that it has been singled out for prosecution and that this discriminatory selection was based on an impermissible consideration such as race, religion or the exercise of constitutional rights. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *U.S. v. Jennings,* 724 F.2d 436, 445 (5th Cir.1984). These elements may be demonstrated by statistical evidence. *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed. 498 (1977).

■■■ The Fourteenth Amendment claim fails for two reasons. First, ACORN has not demonstrated that the City enforced § 38–182 selectively. On August 15, 1983 New Orleans police officers were first directed to enforce the ordinance. On August 18 an ACORN member was cited for its violation. Although ACORN called witnesses to testify that other groups had tagged without being cited, no one testified that other groups had solicited following the issuance of the August 15 letter. Nor did ACORN call police officers or employees of the City records office to establish whether other groups had been cited. Secondly, ACORN failed to put on evidence to show that any discrimination was due to an impermissible purpose. Simple allegations, without proof of discriminatory enforcement, are inadequate to establish an equal protection violation under *Yick Wo.*

■■■ Section 38–182 is unconstitutional on its face since it is substantially overbroad and cannot be justified as a time, place or manner restriction. Plaintiff is entitled to reasonable attorney's fees under 42 U.S.C. § 1988.

Accordingly, ACORN's motion is GRANTED and it is hereby ORDERED that a permanent injunction issue barring

---

**18.** Detailed schemes for regulating solicitation may be permissible if enacted with adequate respect for speech interests. *See ISKCON v. City of Houston,* 689 F.2d 541 (5th Cir.1982).

**19.** The Court notes that the City was already on notice that its ordinances must be narrowly drawn to accommodate speech interests. In *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) the Supreme Court struck down as overbroad another New Orleans ordinance which had made it unlawful for persons to curse or revile or use obscene or opprobrious language to a police officer. The fact that the particular defendant's language might not have been protected under an appropriately drawn statute was immaterial and the conviction was overturned.

**20.** *Compare Police Department v. Mosely,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (city ordinance prohibited picketing next to a school but exempted labor picketing from the prohibition).

the City of New Orleans from enforcing § 38–182 of the City Code.