(No. 62096.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SUSAN TOSCH, Appellee.

*Opinion filed December 3, 1986.*

CLARK, C.J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Thomas V. Gainer and Daniel R. Carter, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin and Deborah A. White, Assistant Public Defenders, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Susan Tosch, was charged by complaint with standing in the roadway and stopping automobiles for the purpose of soliciting a ride or business in violation of section 11—1006 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—1006). The circuit court of Cook County, upon allowance of defendant's oral motion to dismiss the charge, held sections 11—1006(a) and (b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 1—100 *et seq.*) unconstitutional, and the People appealed (87 Ill. 2d R. 603).

The complaint charged that defendant "committed the offense of PEDESTRIAN SOLICITING RIDES OR BUSINESS in that SHE DID STAND IN THE ROADWAY AND STOP AUTOS FOR THE PURPOSE OF SOLICITING A RIDE OR BUSINESS ***." The police arrest report indicates that defendant was taken into custody when the arresting officer "observed her standing in the roadway stopping vehicles containing males [*sic*] subjects and engaging them in conversation. After arrestee observed arresting officers she moved a block further down the street," continuing to solicit rides on the public way.

Section 11—1006 provides, in pertinent part:

"(a) No person shall stand in a roadway for the purpose of soliciting a ride from the driver of any vehicle.

(b) No person shall stand on a highway for the purpose of soliciting employment or business from the occupant of any vehicle.

(c) No person shall stand on a highway for the purpose of soliciting contributions from the occupant of any vehicle except within a municipality when expressly permitted by municipal ordinance. Solicitation on highways within this State shall be allowed only at intersections where all traffic is required to come to a full stop. The soliciting agency shall be:

1. registered with the Attorney General as a charitable organization as provided by 'An Act to regulate solicitation and collection of funds for charitable purposes, providing for violations thereof, and making an appropriation therefor', approved July 26, 1963, as amended;

2. engaged in a Statewide fund raising activity; and

3. liable for any injuries to any person or property during the solicitation which is causally related to an act of ordinary negligence of the soliciting agent."
Ill. Rev. Stat. 1985, ch. 95½, pars. 11—1006(a), (b), (c)(1), (c)(2), (c)(3).

In holding the statute unconstitutional, the circuit court found that the exemption of charitable groups from the statute's prohibition against soliciting rides and business on public ways resulted in an arbitrary and unreasonable classification. The order did not state whether the court found the statute invalid as violative of equal protection guarantees or because it was special legislation, but in either event, the standards for determining its validity are the same. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477-78; *People v. Gurell* (1983), 98 Ill. 2d 194, 206.) The complaint did not state whether defendant was charged under subsection (a) or (b) of the stat-

ute, and the circuit court declared both subsections (a) and (b) unconstitutional.

Citing *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, and *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, the People argue that because there were no fundamental rights implicated in the instant case, the test to be applied in determining the validity of the statute was whether the scheme was rationally designed to further a legitimate State purpose. They assert that neither the right to stand in the roadway and solicit rides, business or employment nor the right to solicit for charitable contributions is a fundamental right. They submit that there was a reasonable basis for distinguishing the class to which the law was applicable from the class to which it was not: the General Assembly has determined that soliciting for charitable purposes was an important means of providing for the health, safety and welfare of the citizens of Illinois, whereas soliciting for rides and business only created health, safety and welfare problems.

Defendant concedes that keeping the roadways safe for travel was a legitimate purpose of section 11—1006 and that prior to 1980, when it proscribed solicitation of "employment, business or contributions," section 11—1006 had been held constitutional. (See *United States Labor Party v. Oremus* (7th Cir. 1980), 619 F.2d 683.) She argues, however, that the amendment of subsections (a) and (b) and the addition of subsection (c), creating an exception for solicitation for charitable purposes, were in no way related to this legitimate purpose. Citing the House and Senate bills and the debates in the General Assembly (81st Ill. Gen. Assem., Senate Proceedings, March 15, 1979, at 12, 100-11; March 20, 1979, at 5-6; June 10, 1979, at 1-2; 81st Ill. Gen. Assem., House Proceedings, April 26, 1979, at 89, 91-92) leading to the enactment of section 11—1006, defendant also argues that

the statute "creates an inherently suspect classification which was intended to exclude religious organizations referred to as 'cults' such as the Moonies and Hare Krishnas." She asserts the transcripts show that the requirement of statewide fundraising activity was considered an "important protection" against fundraising by cults. She argues that subsection (c) does not act uniformly as to all those persons soliciting rides, business or charitable contributions on the streets, and results in discrimination as to many of them because certain groups may solicit charitable contributions, whereas others may not. Finally, defendant admits that there may be questions concerning her standing to challenge the statute's validity because her conduct does not fall within the class of conduct which is regulated by subsection (c). She argues, however, that she has standing to contest the constitutionality of the entire section because subsections (a), (b) and (c) are so interrelated that the invalidity of subsection (c) renders the entire statute invalid (*People v. Mayberry* (1976), 63 Ill. 2d 1); and that her conduct constitutes an exercise of her first amendment rights (*County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213; *Gooding v. Wilson* (1972), 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103).

Before addressing the issues, we note certain concessions made during oral argument by defendant's counsel. When questioned whether the statute, absent subsection (c), was constitutional, counsel responded in the affirmative. He agreed with the People that subsections (a) and (b) were a valid means of providing for the health, safety and welfare of those persons traveling on the highways, and that keeping the highways safe is a legitimate State interest to which subsections (a) and (b) are clearly related.

Although in our opinion there is a basis for doubt whether defendant has standing to challenge the validity

of the statute, the People have not raised the issue. Under the circumstances, we will not discuss the question of standing and will turn to a consideration of the merits.

We consider first the question whether, as asserted by defendant, the statute purports to regulate a fundamental right. We do not agree that any rights under the first amendment are here abridged. First amendment rights are not absolute, and reasonable time, place and manner restrictions on the exercise of those rights are well recognized.

> "Narrow and reasonable regulation of the exercise of rights designed to keep the streets open and safe for travel is not prohibited by the First Amendment. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 154-55, 89 S. Ct. 935, 940-41, 22 L. Ed. 2d 162 (1969); *Adderley v. Florida*, 385 U.S. 39, 41-43, 87 S. Ct. 242, 244-45, 17 L. Ed. 2d 149 (1966); *Cox v. Louisiana*, 379 U.S. 536, 554-55, 85 S. Ct. 453, 464, 13 L. Ed. 2d 471 (1965)." (*United States Labor Party v. Oremus* (7th Cir. 1980), 619 F.2d 683, 688.)

We hold, therefore, that the statute in question did not involve or abridge any first amendment right of defendant.

We consider next the question whether the statute creates an unreasonable classification violative of either the equal protection provisions of the Federal Constitution or the equal protection and special legislation provisions of the Illinois Constitution. In *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477-78, the court said:

> "The fourteenth amendment to the Federal Constitution requires equality between groups of persons 'similarly situated.' It does not deny a State the power to treat different classes of persons differently. (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1034-35; *People v. Mathey* (1983), 99 Ill. 2d 292, 296; *People v. Bradley* (1980), 79 Ill. 2d 410,

416.) In fact, in the absence of a fundamental right or suspect classification, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. (*Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312-13, 49 L. Ed. 2d 520, 524, 96 S. Ct. 2562, 2566-67; *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 204; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578.) This is the traditional equal protection analysis that has been used by this court in assessing both Federal and State equal protection challenges. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 121; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) Under this analysis, ' "[a] classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " ' *Eisenstadt v. Baird* (1972), 405 U.S. 438, 447, 31 L. Ed. 2d 349, 359, 92 S. Ct. 1029, 1035, citing *F. S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 64 L. Ed. 989, 990, 40 S. Ct. 560, 561-62.

This court has also applied the equal protection analysis, articulated above, in reviewing a statute challenged under the special legislation provision of the Illinois Constitution. (*People v. Gurell* (1983), 98 Ill. 2d 194, 206; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 124; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 77.) The reasons underlying the similar treatment of equal protection and special legislation in Illinois were discussed extensively in *Anderson* and, therefore, need not be repeated here."

Defendant presents an argument to the effect that the provisions of subsection (c) discriminate against other charitable groups because the requirement of permission from a municipality to solicit within its limits enables the municipalities, without sufficient statutory guidelines, to choose between such groups and determine

who may be authorized to solicit funds. We need not discuss these contentions for the reason that clearly defendant is not a member of the class against whom she contends the statute discriminates, and is without standing to challenge the validity of the statute on that ground. *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 467.

Defendant contends that, in permitting persons to stand on a highway upon compliance with its requirements, subsection (c) creates an unreasonable classification for the reason that the hazard which the statute seeks to eliminate is just as great whether the person standing on the highway does so upon compliance with subsection (c) or in violation of subsections (a) and (b).

As is stated in the quotation from the opinion in *Jenkins v. Wu* (1984), 102 Ill. 2d 468, a State may treat different classes of persons differently, and absent a fundamental right may differentiate between persons similarly situated if there is a rational basis for doing so. The enactment of subsections (a) and (b) shows that the General Assembly has determined that soliciting rides or business on the public highways creates problems concerning the health, safety and welfare of the citizens of this State. It has apparently also decided that solicitation of charitable contributions stands on a different footing than solicitation for other purposes and results in benefits to the public which offset the risks inherent in solicitation on the highways. We find the classification reasonably related to a legitimate governmental objective, and as the court said in *Garcia v. Tully* (1978), 72 Ill. 2d 1, "[w]hether the course chosen by the General Assembly to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry." 72 Ill. 2d 1, 10.

For the reasons stated, we hold that defendant has failed to overcome the presumption that the classifica-

tion was reasonable and the statute valid. The judgment is therefore reversed, and the cause is remanded to the circuit court of Cook County for proceedings consistent with this opinion.

*Reversed and remanded.*

CHIEF JUSTICE CLARK, dissenting:

I respectfully dissent.

I would have no problem with this statute if it prevented all persons equally from standing on public highways and soliciting motorists. Such activity obviously creates grave and unnecessary risks, for solicitor and motorist alike. The State has a legitimate, indeed a compelling, interest in keeping both safe from harm. The State may also have an interest in protecting a motorist stopped at an intersection, who, as a captive audience, may be subject to undue pressure to contribute. But neither of these interests can possibly justify discriminatory treatment of different classes of solicitors without regard to the interest the State itself asserts. This statutory scheme lets a fundraiser for the Lions Club engage in an activity which it forbids to a newsboy hawking his papers, a Hare Krishna selling incense, or a nun begging alms for the poor. There is no showing that the ultimate destination of the funds solicited has any relationship whatsoever to the safety of the means by which the funds are gathered. Nor is it any answer to claim that the State may balance the risk of harm against the benefit it believes will accrue from the collection of funds for certain specified charities, since by so doing the State discriminates between speakers on the basis of perceived differences in the content of their messages. This is a type of discrimination which the first amendment categorically forbids.

It seems to me that defendant has really made two claims. The first claim is that the statute prohibiting

roadway solicitation of motorists unconstitutionally favors solicitation for charitable contributions over noncharitable business solicitation. The second claim is that the statute unconstitutionally favors the roadway solicitation for contributions engaged in by some charitable organizations over the solicitation of others. Both claims rest upon both the equal protection clause of the fourteenth amendment and the first amendment guarantee of free speech. In essence, defendant claims that the statute arguably infringes upon interests protected by the first amendment; that these interests are to be deemed "fundamental" for equal protection purposes; that classifications affecting fundamental rights must be subject to strict scrutiny under the equal protection clause; and that the application of such scrutiny to this regulation demonstrates its unconstitutionality. While conceding that she is not a member of the class affected by the statute's discrimination against certain charities, defendant argues, citing *Gooding v. Wilson* (1972), 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103, that she has standing under the first amendment overbreadth doctrine to raise the claims of that class.

The majority treats these two claims somewhat differently. As to the first claim, the majority first intimates that defendant lacks standing, but nevertheless proceeds to consider the merits of her claim. So far as I can understand what the majority has done, it decides that no fundamental rights, *i.e.*, "rights under the first amendment are here abridged" (114 Ill. 2d at 480). I am not sure what the majority means by this statement. Perhaps the majority agrees with the State that "neither the right to stand in the roadway and solicit rides, business, or employment nor the right to solicit for charitable contributions is a fundamental right." (114 Ill. 2d at 478.) If this is the majority's meaning, I must disagree, for reasons which will be clear below. If, on the other

hand, the majority does believe that this statute implicates fundamental rights, the majority is correct in stating that "[f]irst amendment rights are not absolute, and reasonable time, place, and manner restrictions on the exercise of these rights are well recognized" (114 Ill. 2d at 480). But while the majority cites two first amendment cases dealing with reasonable restrictions upon the time, place, and manner of speech in public fora—cases which, had the majority further considered them, would have pointed the way to the proper analysis of this claim, it fails to apply the proper test for assessing time, place, and manner restrictions. Without further analysis of the first amendment interest at stake, the majority then seems to accept the State's contention that no fundamental rights are at issue and applies the minimal scrutiny standard appropriate to equal protection claims that do not involve a fundamental right. In reasoning embodied in a single sentence, the majority concludes that the classification at issue, being neither arbitrary nor capricious, is reasonable.

As to the second claim, the majority simply concludes that defendant lacks standing.

I believe that the majority errs when it implies that there is any question as to defendant's standing to raise her first claim, that of unconstitutional discrimination against persons soliciting business. Membership in the class aggrieved by an allegedly unconstitutional provision is all that is required for standing under Illinois law. (*People v. Upton* (1986), 114 Ill. 2d 362.) Defendant is a member of the class aggrieved by this statute.

She complains that the statute discriminates against the activities in which she engaged and for which she was charged, soliciting motorists for rides and soliciting motorists for business, penalized respectively under sections 11—1006(a) and 11—1006(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, pars. 11—1006(a),

11—1006(b)). The essence of her first claim is that these activities are treated more harshly than the solicitation for charitable contributions exempted from penalty under section 11—1006(c). Since the State chose to charge her under both sections, it cannot be heard to claim that she was only soliciting a ride, and not soliciting business. Defendant is therefore a member of the class aggrieved by the proscription of subsections (a) and (b) activity. In fact, if defendant is not a member of that class, it is difficult to imagine who would be a member of that class.

Moreover, since this statute arguably infringes upon first amendment rights, defendant has standing to raise the claims of hypothetical third parties whose activity also suffers the discriminatory impact of subsections (b) and (c), considered together. Where a statute sweeps too broadly and infringes upon first amendment freedoms, a party whose conduct is not protected by the first amendment has standing to challenge the facial validity of the entire statute and to assert the rights of hypothetical parties not before the court. (*Secretary of State v. Joseph H. Munson Co.* (1984), 467 U.S. 947, 957, 81 L. Ed. 2d 786, 795-96, 104 S. Ct. 2839, 2847.) This rule ensures the litigation of first amendment claims despite the "chilling effect" of proscription on many potential litigants. In this case, subsection (b)'s proscription of solicitation for business would, it seems to me, necessarily include a great deal of first amendment activity. Newspaper vendors, for example, would be prohibited from hawking their papers to motorists stopped at intersections, a practice whose existence will be apparent to anyone who has recently driven down Lake Shore Drive in the city of Chicago during rush hour. Moreover, other forms of business solicitation are also protected by the first amendment (see, *e.g., Bates v. State Bar of Arizona* (1977), 433 U.S. 350, 363, 53 L. Ed. 2d 810, 823, 97 S. Ct. 2691, 2698-99 (lawyer advertising); *Virginia State*

*Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 761-62, 48 L. Ed. 2d 346, 358, 96 S. Ct. 1817, 1825-26 (advertising of prescription drug prices)), and would be equally subject to proscription under this statute. Under the overbreadth doctrine, defendant has standing to raise the claims of hypothetical third parties who engage in these and other forms of first amendment activity, and to argue that the forms of expression in which they engage suffer the discrimination in favor of the solicitation for certain charities immunized from penalty under subsection (c).

For the same reasons, defendant has standing to assert the speech rights of those whose solicitation for contributions is penalized under subsection (c) and who are not given the exemption which subsection (c) provides to charities meeting certain criteria. Defendant argues: (1) that the proscriptions against solicitation contained in subsections (a), (b), and (c) are so intertwined that she should be granted standing to challenge subsection (c) as well as subsections (a) and (b) (see *People v. Mayberry* (1976), 63 Ill. 2d 1, 6-7), and (2) that she has standing to raise the claims of those third parties affected by subsection (c) under the first amendment overbreadth doctrine (see *Secretary of State v. Joseph H. Munson Co.* (1983), 467 U.S. 947, 956-57, 81 L. Ed. 2d 786, 795-96, 104 S. Ct. 2839, 2847; *Gooding v. Wilson* (1972), 405 U.S. 518, 520-21, 31 L. Ed. 2d 408, 413, 92 S. Ct. 1103, 1105). If the majority has any answer to these arguments and authorities, it has escaped me. Without any consideration of *Mayberry* or *Gooding*, both cited by defendant, the majority states simply that "defendant is not a member of the class against whom she claims the statute discriminates," and cites the case of *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 467, in support.

*Bakalis* is not apposite because the claim there discussed was not an equal protection claim involving in-

fringement upon first amendment interests. While other sections of *Bakalis* consider first amendment claims, the section cited by the majority deals with another, nonfundamental claim. On the page cited by the majority, the court in *Bakalis* discusses the claim that provision of public transportation funds for certain nonpublic school pupils discriminated against other nonpublic school pupils who could not meet the requirement of residence along a regular public school bus route. (54 Ill. 2d 448, 467.) This discrimination was challenged solely on the basis that it violated the Illinois counterpart to the equal protection clause, section 13 of article IV of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 13). Since the first amendment was not involved, as it is here, plaintiff's lack of membership in the class of nonpublic school pupils unable to take advantage of the transportation funds deprived her of standing. Here, however, first amendment interests are involved, and therefore *Bakalis* is inapplicable. While membership in the class aggrieved is usually the *sine qua non* for standing, the overbreadth doctrine creates an exception both for direct first amendment claims and for equal protection claims which implicate first amendment rights. Therefore, defendant has standing to raise the claims of those whose solicitation for contributions is forbidden by this statute.

Turning to the merits of defendant's claims, I believe that the crucial mistake made by the majority lies in its apparent acceptance of the State's contention that no fundamental rights are here involved. Since the majority itself makes no argument for this contention, it is necessary to guess at what that argument might be.

It is elementary that, in the absence of a fundamental right or suspect classification, the legislature may differentiate between persons similarly situated if there is a rational basis for doing so. (*Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312-13, 49 L.

Ed. 2d 520, 524, 96 S. Ct. 2562, 2566-67; *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477-78.) However, it is equally elementary that a statute which does discriminate on the basis of suspect classifications of fundamental rights will be subject to strict scrutiny. Strict scrutiny means that the State must demonstrate that its classifications are narrowly tailored to meet a compelling State interest. First amendment rights are fundamental. In fact, "[w]hen government regulation discriminates among speech-related activities in a public forum, the equal protection clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." (*Carey v. Brown* (1980), 447 U.S. 455, 461-62, 65 L. Ed. 2d 263, 270, 100 S. Ct. 2286, 2290-91; *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 97.) The greater protection granted first amendment rights flows inexorably from their role as mainstays of the democratic process, and from their contribution to individual self-expression and creativity. Therefore, if, as I believe, this statute implicates first amendment rights, the majority errs by requiring only that the statute's classification have some rational basis.

I can think of two reasons why the majority might have accepted the State's contention that this statute did not implicate fundamental, first amendment rights. The majority must believe either that (1) solicitation for business or charitable contributions is not a fundamental right or a speech-related activity, or (2) even assuming that it is, State ownership of the roadway gives the State the right to arbitrarily determine who can exercise such a right on its property. I believe that both propositions are incorrect.

The Supreme Court has clearly stated that solicitation of charitable contributions is protected expression under the first amendment. (*Heffron v. International So-*

*ciety for Krishna Consciousness, Inc.* (1981), 452 U.S. 640, 647, 69 L. Ed. 2d 298, 306, 101 S. Ct. 2559, 2563 (solicitation of funds by religious organization at State fair); *Village of Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 632, 63 L. Ed. 2d 73, 84, 100 S. Ct. 826, 833 (door-to-door solicitation of funds for charitable organization).) Solicitation is protected because it is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes," and because "without solicitation the flow of such information and advocacy would likely cease." (444 U.S. 620, 632, 63 L. Ed. 2d 73, 84, 100 S. Ct. 826, 833.) Moreover, nonmisleading advertising of lawful products is also protected. (*Bates v. State Bar of Arizona* (1977), 433 U.S. 350, 362-63, 53 L. Ed. 2d 810, 822-23, 97 S. Ct. 2691, 2698-99 (lawyer advertising); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.* (1976), 425 U.S. 748, 761-62, 48 L. Ed. 2d 346, 358, 96 S. Ct. 1817, 1825-26 (advertising of prescription drug prices).) Thus, the majority cannot be understood to mean that defendant and others have no fundamental right to solicit.

Alternatively, the majority may mean that the right to solicit ends where State property begins—on the edge of the public roadway. But this proposition is also incorrect. While, as a general rule, a State may control the use of its own property, its control is much more limited in those places deemed to be "public fora." (*Cornelius v. NAACP Legal Defense & Educational Fund, Inc.* (1985), 473 U.S. 788, 800, 87 L. Ed. 2d 567, 578, 105 S. Ct. 3439, 3448.) Public fora are those "places which by long tradition or by government fiat have been devoted to assembly and debate." (*Perry Education Association v. Perry Local Educators' Association* (1983), 460 U.S. 37, 45, 74 L. Ed. 2d 794, 804, 103 S. Ct. 948, 954.) The Supreme Court has stated, time and time again, that tradi-

tional public fora include sidewalks, parks, and streets. (See *United States v. Grace* (1983), 461 U.S. 171, 177, 75 L. Ed. 2d 736, 743, 103 S. Ct. 1702, 1707; *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza* (1968), 391 U.S. 308, 315, 20 L. Ed. 2d 603, 610, 88 S. Ct. 1601, 1607; *Hague v. CIO* (1939), 307 U.S. 496, 515, 83 L. Ed. 1423, 1436-37, 59 S. Ct. 954, 964. See also *Jews for Jesus, Inc. v. Board of Airport Commissioners* (1986), 785 F. 2d 791, *cert. granted* (1986), 479 U.S. ___, 93 L. Ed. 2d 20, 107 S. Ct. 61.) The majority has simply provided no basis for the contention that the roadway involved here is not a public forum.

In two cases in the Federal courts, defenders of ordinances similar to the statute under consideration here argued that streets open to motorized vehicular traffic were not public fora. (See *ACORN v. City of Phoenix* (9th Cir. 1986), 798 F.2d 1260, 1264-67; *ACORN v. City of New Orleans* (E.D. La. 1984), 606 F. Supp. 16, 19-20.) In neither case was the argument accepted. Nor do I believe it to be a plausible argument, particularly given the strong Supreme Court precedent cited above.

Therefore, this case does involve fundamental rights. It is simply beyond denial that the first amendment protects the right to solicit in a public forum. Given the fundamentality of the right in question, the majority's application of a deferential standard of review is mistaken.

Moreover, application of the proper standard of review compels the conclusion that this statute is unconstitutional. As a general rule, speakers may be excluded from a public forum only when "the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." (*Cornelius v. NAACP Legal Defense & Educational Fund, Inc.* (1985), 473 U.S. 788, 800, 87 L. Ed. 2d 567, 578, 105 S. Ct. 3439, 3448.) In addition, the State may enforce reasonable restrictions upon the time, place and

manner of speech so long as the restrictions: (1) are content neutral, (2) narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels of communication. (See *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 47, 89 L. Ed. 2d 29, 37, 106 S. Ct. 925, 928; *Perry Education Association v. Perry Local Educators' Association* (1983), 460 U.S. 37, 45, 74 L. Ed. 2d 794, 804, 103 S. Ct. 948, 955.) This statute is not narrowly drawn to achieve the State's admittedly compelling interest in highway safety, and it is not a content-neutral restriction upon the place of speech.

Taking the second point first, this is not a content-neutral restriction. The Supreme Court has clearly stated that "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (*Police Department v. Mosley* (1972), 408 U.S. 92, 95, 33 L. Ed. 2d 212, 216, 92 S. Ct. 2286, 2290.) Moreover, "under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities." (408 U.S. 92, 96, 33 L. Ed. 2d 212, 217, 92 S. Ct. 2286, 2290.) In *Mosley*, the Supreme Court held that the city of Chicago could not ban most forms of peaceful picketing within 150 feet of a public school, during school hours, while permitting similarly peaceful picketing of a school involved in a labor dispute. The ordinance's discrimination between "labor" picketing and "non-labor" picketing was held to be content related. (408 U.S. 92, 100, 33 L. Ed. 2d 212, 219, 92 S. Ct. 2286, 2292.) Here, the statute's discrimination between business solicitation and charitable solicitation,

as well as its discrimination between solicitation by different types of charitable organizations is likewise content related.

Moreover, there is considerable evidence that the legislature enacted this legislation in order to favor popular charities over unpopular "cults." The sponsors of the House and Senate bills amending section 11—1006 to allow charitable solicitation both made clear that they only wished certain favored groups to enjoy the benefit of roadway solicitation. In the Senate it was stated that legislation would benefit "the Veteran's organizations, the Lions, the Kiwanis and others" (81st Ill. Gen. Assem., Senate Proceedings, March 20, 1979, at 5), and in the House that it would permit solicitation by "the Lyons [sic], Knights of Columbus, the V.F.W. and other fine organizations" (81st Ill. Gen. Assem., House Proceedings, April 18, 1978, at 10). One legislator specifically referred to the requirement of statewide fund raising activity as "an important protection. I have some concern that this Bill might possibly include fund raising by cult [sic] and I think we should be considering that." (81st Ill. Gen. Assem., House Proceedings, April 26, 1979, at 91.) Another legislator, again referring to the "Lions Club, the Rotary, the Knights of Columbus, VFW, [and] Poppy Day," which he said were "very worthwhile organizations," contrasted them to the "Moonies or the cults or what have you." (81st Ill. Gen. Assem., House Proceedings, April 26, 1979, at 91.) After a colloquy, another legislator, referring to the bill's vesting of discretion with municipalities, seemed to imply that this provision was also aimed at "cults," stating that another legislator in the prior session had been "afraid of the Moonies. No, but anyway you have to get permission from a municipality in order to be able to do the soliciting." (81st Ill. Gen. Assem., House Proceedings, April 26, 1979, at 92.) Thus there is ample evidence that the

statute's requirements of statewide fundraising and registration as a charitable organization, requirements unlikely to be met by, for example, religious groups which are not required to register, were intended to limit the benefits of roadway solicitation to those groups whose messages the legislators favored, and to deny the same benefits to groups whose messages the legislators disliked.

In so doing, the legislature granted to the favored groups the exclusive benefit of a fundraising method which is as powerful as it is dangerous. Motorists stopped at intersections, temporarily trapped in their own vehicles, represent a "captive audience," extremely susceptible to undue pressure. (See *ACORN v. City of Phoenix* (9th Cir. 1986), 798 F.2d 1260, 1270 n.11, 1271 n.12.) Many will give simply to free themselves of annoyance and continue on their way. To grant such a powerful method of fundraising to some groups and to deny it to others contradicts the basic purposes of the first amendment.

In fact, this statute's discriminatory nature and purpose serve to distinguish it from other, nondiscriminatory bans on roadway solicitation which have been held constitutional. The bans on solicitation upheld in *ACORN v. City of Phoenix* (9th Cir. 1986), 798 F.2d 1260, and *United States Labor Party v. Oremus* (7th Cir. 1980), 619 F.2d 683, both included roadway solicitation of any business, employment, or contributions without regard to the ultimate destination of the funds solicited. Thus neither case is apposite, and the majority's heavy reliance on *Oremus* is misplaced.

For the foregoing reasons, I would conclude that this statute is not content neutral, and is not, therefore, a reasonable restriction upon the time, place, or manner of speech. Even assuming that the ban was content neutral, I would have some doubt whether it would meet the

second prong of the test, since discrimination among different types of solicitation, all equally dangerous, would not seem necessary to serve an admittedly significant State interest in safety. Moreover, one court has held that even a content-neutral ban on roadway solicitation was not narrowly tailored to meet a significant State interest. (*ACORN v. City of New Orleans* (E.D. La. 1984), 606 F. Supp. 16, 23.) In any case, a discriminatory statute can hardly be considered to be narrowly tailored to meet the State's significant interest in traffic safety.

Since the statute is not content neutral, it can only be justified upon a showing that it meets the strictest scrutiny, *i.e.*, that it is narrowly drawn to meet a compelling State interest. It is not. In *Police Department v. Mosley* (1972), 408 U.S. 92, 99, 33 L. Ed. 2d 212, 219, 92 S. Ct. 2286, 2292, the court held that discrimination against peaceful nonlabor picketing was not narrowly tailored to meet a compelling State interest in preventing the disruption of public classrooms, for the simple reason that the State could not show that labor picketing was any less disruptive than nonlabor picketing. Here, the State has made no showing that commercial, religious, or political solicitation is any more dangerous than solicitation for the Kiwanis, the Lions, or the Elks. Therefore, this statute is not narrowly tailored to meet a compelling State interest.

Moreover, this statute violates the first amendment for a separate and independent reason. Unlike the predecessor statute upheld in *United States Labor Party v. Oremus* (7th Cir. 1980), 619 F.2d 683, this statute grants municipalities complete discretion as to whether to allow roadway solicitation by registered charities, a provision which the legislative history quoted above makes clear was intended to allow the proscription of solicitation by unpopular "cults." Even were I to assume that this statute was not unconstitutional for the reasons given above,

I would still believe that it falls afoul of the first amendment rule forbidding licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to the proper regulation of public places. See *Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 153, 22 L. Ed. 2d 162, 168, 89 S. Ct. 935, 940.

For these reasons, I would affirm the judgment of the circuit court, and I therefore dissent.